IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL BOYCE,

        Plaintiff,

    v.

JO ANNE BARNHART, Commissioner of Social Security,

        Defendant.

No. 03-6380-HU

**AMENDED** OPINION AND ORDER

Kathryn Tassanari
Robert Baron
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
David J. Burdett
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900M/S 901
Seattle, Washington 98104
    Attorneys for defendant

///

AMENDED OPINION AND ORDER - 1

HUBEL, Magistrate Judge:

Paul Boyce brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance benefits and Supplemental Security Income (SSI) disability benefits.

**Procedural Background**

Mr. Boyce filed for disability benefits on July 29, 2002, and SSI disability benefits on **October 1, 2002.** He alleges disability as of March 31, 2000. His applications were denied initially and on reconsideration. A hearing was held on July 22, 2003, before Administrative Law Judge (ALJ) William L. Stewart. In a decision issued on August 28, 2003, the ALJ found Mr. Boyce not disabled. The Appeals Council denied Mr. Boyce's request for review, making the ALJ's decision the final agency decision.

The Commissioner now concedes that her decision was erroneous and moves to remand the case to enable the ALJ to: 1) address and explain the weight given to the lay opinion of the occupational therapist and her physical capacity evaluation; 2) address the opinion of the treating physician; 3) consult with a medical expert to determine the severity of Mr. Boyce's impairments; 4) fully address Mr. Boyce's testimony and reconsider his subjective complaints; 5) re-evaluate Mr. Baker's ability to return to his past relevant work; and 6) consult with a vocational expert to clarify the effects of any assessed limitations on the occupational base.

AMENDED OPINION AND ORDER - 2

**Factual Background**

Mr. Boyce was 51 years old at the time of the hearing. He attended college for two years. He received disability benefits from May 1985 until September 2001. Between 1997 and 2000, he worked part-time as a telemarketer.

**Medical Evidence**

In February 1979, while working as a boilermaker, Boyce fell 30 feet off a scaffold at a construction site and fractured his L-1 vertebra. Tr. 180, 221. A CT scan taken at the time of the injury showed a bony fragment in the spinal canal. Tr. 180. The back healed uneventfully, but Mr. Boyce continued to have intermittent tingling and burning in the thighs, more on the right than the left, lasting about five minutes at a time. Id.

He returned to work after approximately 10 months, but after three years, stopped working at his previous occupation. Tr. 221. He subsequently worked in plumbing construction, but began receiving disability benefits in 1985. Id.

On April 27, 1982, Mr. Boyce saw Dr. McGroarty, a neurologist, for numbness in the back of the right leg. Id. Upon examination, Dr. McGroarty found mild decreased vibratory sense in both lower extremities and decreased sensation to pin prick and touch in the right posterior calf. Tr. 181. A myelogram and CAT scan showed the old fracture at L-1 and slight narrowing of the spinal canal. Tr. 179.

In May 1987, Mr. Boyce reported problems with bowel incontinence and urinary retention, as well as continued tingling

AMENDED OPINION AND ORDER - 3

in his legs. Tr. 174. A myelogram showed moderate wedge compression of L-1 with mild posterior spurring at T12-L1 and L1-2 mildly indenting the ventral margin of the caudal sac. Tr. 172. The radiologist concluded that there was more posterior spurring than in previous studies. Id.

On February 19, 1988, Dr. McGroarty wrote a letter stating that Mr. Boyce had spinal cord trauma with sensory disorganization and impairment of bowel and bladder control. Tr. 157. On December 16, 1988, Dr. McGroarty wrote another letter stating that she believed Mr. Boyce was disabled because of back pain, leg spasms and incontinence. Tr. 142. She added:

> He needs ready access to a bathroom because of his urinary frequency and urgency. His back pain limits his ability to do the job he was trained for and the leg spasms limit how long he can sit, as does the back pain.

Id. An MRI on October 13, 1989, showed an old compression fracture at L1 with marked kyphotic angulation at the T12-L1 level and early degenerative changes at the L5-S1 disc. Tr. 135.

On July 25, 1989, Mr. Boyce was seen by Dr. Ribovich, a neurosurgeon. Tr. 112. Mr. Boyce reported continued sphinteric dysfunction, with increasing frequency of urinary and fecal incontinence over the last six months. Id.

Upon examination, Dr. Ribovich noted decreased pin sensation along the plantar aspect of the left foot and decreased touch sensation along the dorsal left foot. Tr. 112-13. He recommended a repeat lumbar myelogram to investigate a possible compressive lesion. Tr. 113. On September 29, 1989, Mr. Boyce was examined by Dr. Johnson, another neurosurgeon. Tr. 110. His findings were

AMENDED OPINION AND ORDER - 4

similar to those of Dr. Ribovich, and he agreed that there was "some reason for concern because of persistent urinary and fecal incontinence." Tr. 111. He also recommended either a repeat MRI or myelogram and CT of the lumbar region. Id.

On January 14, 1999, Dr. McGroarty wrote a letter stating that Mr. Boyce continued to have significant problems with back pain and bladder and bowel incontinence. Tr. 121. She noted that his back pain and incontinence were severely aggravated by certain physical activities and sleeping on the wrong kind of mattress. Id. Dr. McGroarty treated Mr. Boyce with injections from January 1999 to the spring of 1999. Tr. 115-118, 119.

On January 31, 2002, Mr. Boyce was seen by Dr. Englander, a neurologist. Tr. 221. Mr. Boyce reported that he had been on disability since 1985. Id. Mr. Boyce told Dr. Englander that although his back pain had been stable for quite a while, over the past six months it had become more intense, with buttock pain and dysthesias. Id.

Mr. Boyce reported that he had stopped smoking in January 2000 after 34 years and that he previously been an alcoholic, but had been sober for six years through AA. Tr. 222. Examination showed normal sensation with the exception of over the buttock areas, where he had significant hyperalgesia. Tr. 223. Dr. Englander thought Mr. Boyce had probably sustained a burst fracture of L1 in 1979, with neurologic residuals in the form of sensory disturbance. Id.

In a letter dated May 14, 2001, Dr. Englander said:

> Mr. Paul Boyce is now under my care. He is seen neurologically for residuals from a significant fall in

AMENDED OPINION AND ORDER - 5

>           the mid-1980s which resulted in compression fracture,
>           cauda equina and lower spinal cord dysfunction which
>           gradually improved, but never completely recovered. this
>           has left him with a mild paraparesis and sensory loss in
>           his lower extremities which, I believe, makes him
>           disabled for any employment that he is qualified for by
>           virtue of age, education and experience.

Tr. 220. An x-ray taken January 31, 2002, showed a moderately severe wedge compression fracture of the L1 vertebral body and disc narrowing at L5-S1, consistent with mild to moderate degenerative disc disease. Tr. 225.

On May 24, 2002, a two-hour Physical Capacity Evaluation was done by Charlotte Maloney, OTR. Tr. 226-28. In her opinion, Mr. Boyce could sit for three-quarters of an hour to an hour, stand for half an hour to one hour, and walk for half an hour at a time; stand and walk for two to three hours in an eight-hour day, and occasionally carry up to five pounds. Tr. 226. She thought Mr. Boyce was capable of performing "below sedentary" levels of work. Tr. 227. In the narrative report attached to the form, Ms. Maloney noted that Mr. Boyce gave sufficient effort to validate the evaluation, with no inconsistencies in presentation or performance. Tr. 193.

On October 15, 2002, Dr. Englander completed a form stating that Boyce could lift two pounds occasionally and one pound frequently, walk or stand for two hours in an eight-hour day, and sit four hours in an eight hour day. Tr. 217. Dr. Englander concluded that Mr. Boyce was "not functionally normal and never will be," and that he expected Mr. Boyce's restrictions to be permanent. Id.

On April 2, 2003, Dr. Englander wrote that he thought it

AMENDED OPINION AND ORDER - 6

unlikely that Mr. Boyce could do a full-time sedentary job[1] due to mild paraparesis and incontinence. Tr. 215. Dr. Englander thought his condition had been unchanged since the 1985 injury to his spinal cord. Id.

**Hearing Testimony**

Mr. Boyce testified at the hearing that he had urinary and bowel incontinence and occasional uncontrollable shaking in his legs. Tr. 237. He is unable to drive. Id. He is a recovering alcoholic and, because of his "addictive personality," he takes only ibuprofen for pain. Id. He is homeless. Id. Before he lost his Social Security disability payments, he had an apartment. Tr. 238.

Mr. Boyce stated that he had been an alcoholic for the better part of 16 years because "I was in a lot of pain and I justified my drinking with ... you know, all this pain, nobody knows what I feel like, wah, poor me, pour me another drink and–- but I'm not there today, you know. I give that pain to God." Tr. 239. He has been sober for six and a half years. Tr. 237, 240.

Mr. Boyce testified that he is sometimes unaware of needing to have a bowel movement because of a loss of sensation. Tr. 244. This causes fecal impaction. Id. He loses control of his bowels approximately three times a week. Tr. 245-46. The bowel incontinence is exacerbated by vibration and jarring, such as engine vibration

---

[1] Dr. Englander was asked to assume that sedentary work involved lifting no more than 10 pounds at a time and occasional walking and standing as well as sitting. He was also asked to assume an eight hour day, five days a week, with 10-15 minute breaks in the morning and afternoon and a lunch break of half an hour to one hour.

AMENDED OPINION AND ORDER - 7

on a bus. Tr. 263, 268. Mr. Boyce testified that in order to sit through the Social Security hearing, he had not had dinner the previous night or breakfast the day of the hearing. Tr. 246. Mr. Boyce said he was able to do the telemarketer job because he could get up and go to the bathroom whenever he needed to, which was approximately every hour and a half to two hours. Tr. 250-51.

Mr. Boyce testified that his urinary incontinence is less severe, but he probably has an accident two or three times a week. Tr. 254. He said it "doesn't take much to throw my back out," and then he will have to lie down for a day. Tr. 256. He has numbness in his legs, particularly the right, and in his right foot. Id. He characterized his back pain as "sometimes ... overwhelming," tr. 258, and said he has "a couple" of episodes a day that last about ten minutes. Tr. 259.

The ALJ called a vocational expert (VE), Vernon Arne. The ALJ asked the VE to consider an individual 51 years old with two years of college able to carry up to 10 pounds frequently with an occasional 20-pound maximum, precluded from prolonged sitting, standing or walking without an opportunity to change position. The individual is able to sit three-quarters of an hour at a time and four to six hours a day, stand for half an hour to an hour, two to three hours a day, and walk half an hour at a time, two to three hours a day. Further, the individual would need ready access to bathroom facilities with a few minutes' notice and avoid long vehicle rides. The VE opined that such a person could work as a telemarketer. Tr. 277.

AMENDED OPINION AND ORDER - 8

The VE testified that it would be considered an employer accommodation if the individual needed to take an additional 20 minutes outside allotted break times to attend to needs related to bladder or bowel accidents, or to go to the bathroom on a moment's notice. Tr. 280-81. The VE testified that an employer would not typically permit an employee to lie down periodically. Tr. 281.

The VE testified that the limitations identified by Dr. Englander, tr. 217, would not allow full-time work in a sedentary job. Tr. 282-83.

## Discussion

The Commissioner moves for a remand for further proceedings, requesting that the ALJ essentially be given an opportunity to reconsider every issue in the case, including uncontradicted medical evidence from a treating physician, vocational evidence, the claimant's testimony, and the VE's testimony. The Commissioner concedes that the ALJ failed to provide sufficient grounds for rejecting the evidence from Dr. Englander and Ms. Maloney. The Commissioner concedes that the ALJ made errors in evaluating the testimony of Mr. Boyce. The Commissioner concedes that the ALJ needs to "clarify" the questions asked the VE and reevaluate Mr. Boyce's ability to return to his past work as a telemarketer. Nevertheless, the Commissioner asserts that there are "unresolved issues" and the record "does not require a finding of disability."

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172,

1178 (9th Cir. 2000). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. Benecke, 379 F.3d at 593; Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 293; Harman, 211 F.3d at 1178.

Where this three-part test is satisfied, the court takes the claimant's testimony to be established as true and remands for an award of benefits. Benecke, 379 F.3d at 593. The current case satisfies the criteria for a remand for immediate payment of benefits. The Commissioner admits that the ALJ failed to provide legally sufficient grounds for rejecting uncontradicted medical and vocational evidence and subjective testimony from Mr. Boyce. There are no disputed factual issues or ambiguities in the record which preclude a determination of disability. And it is clear from the record that the ALJ would be required to find Mr. Boyce disabled were the evidence from Dr. Englander, Ms. Maloney and Mr. Boyce credited.

In Benecke, the court made clear its disapproval of remands for

AMENDED OPINION AND ORDER - 10

further proceedings to address improperly discredited evidence and testimony, because such remands contribute to waste and delay and provide "no incentive to the ALJ to fulfill [his] obligation to develop the record." 379 F.3d at 595. The Benecke court characterized such remands as an "unfair 'heads we win; tails let's play again' system of disability benefits adjudication." Id.

I conclude that it is unnecessary and inappropriate to further delay much-needed income to a claimant who is unable to work, entitled to benefits, and currently homeless.

The Commissioner's motion for remand for further proceedings (doc. # 16) is DENIED. This case is reversed and remanded for the immediate payment of benefits **for the period covered by plaintiff's applications for disability insurance benefits filed on July 29, 2002 and SSI disability benefits filed on October 1, 2002.**

IT IS SO ORDERED.

Dated this ___19th___ day of April, 2005.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge

AMENDED OPINION AND ORDER - 11